# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR 06-251-S-EJL |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| MICHAEL BRIAN WOODS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the Court is the Defendant, Michael Brian Woods, motion to suppress. The parties submitted briefing on the motion and a hearing was held on January 18, 2007. Following the hearing the Court made comments on the record and requested additional briefing. Having now considered the parties briefing, testimony and evidence presented, and the entire record herein, the Court issues this written decision regarding the motion to suppress.

## Factual Background

Late in the evening of October 18, 2006 the Defendant, Michael Brian Woods, was walking his dog outside of his home in Payette, Idaho. Special Agents Niles Gooding and Lance Lehnhoff of the Drug Enforcement Agency ("DEA") were outside of Mr. Woods' residence in a vehicle waiting to place him under arrest. The DEA Agents approached Mr. Woods with weapons drawn and effectuated the arrest. Mr. Woods was placed in the front seat of the Agents' vehicle and the Agents holstered their weapons. While in the vehicle, Mr. Woods over heard Agent Lehnhoff

talking to other agents on his cell phone about how they would proceed with their investigation and whether to ask for consent to search.  Whereupon Mr. Woods stated something to the effect that he would not give consent but shortly there after stated "you can search whatever you want, I don't care."  (Dkt. No. 21, Affidavit).

Agent Gooding then read Mr. Woods his Miranda rights and Mr. Woods requested counsel. Mr. Woods later asked the Agents to take his dog back to his home.  The Agents agreed and upon arriving at the residence asked Mr. Woods if they could enter the home, to which Mr. Woods consented.  Once in the home, the Agents again asked Mr. Woods if they could search the residence and Mr. Woods again consented.

## Discussion

1)      <u>Consent to Search</u>:

The government has the burden of establishing the effectiveness of the consent.  <u>See</u> <u>Welch</u>, 4 F.3d at 764 (citing <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181 (1990)).  To meet its burden, the government must demonstrate that the individual giving consent had either actual or apparent authority to consent to the search. <u>See</u> <u>Fultz</u>, 146 F.3d at 1105; <u>Welch</u>, 4 F.3d at 764.  As the owner of the home, Mr. Woods clearly had authority to consent to the search of the home.

To "establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent was freely and voluntarily given."  <u>United States v. Reid</u>, 226 F.3d 1020, 1026 (9th Cir. 2000) (quoting  <u>United States v. Chan-Jimenez</u>, 125 F.3d 1324, 1327 (9th Cir. 1997)).  Mere acquiescence to a claim of lawful authority is insufficient.  <u>Id.</u> (quoting <u>United States v. Shaibu</u>, 920 F.2d 1424, 1426 (9th Cir. 1990); <u>United States v. Spires</u>, 3 F.3d 1234, 1237 (9th Cir. 1993)).  Rather, the government "must show that there was no duress or coercion, express or implied" and that the consent was "unequivocal and specific" and "freely and intelligently given."

Id. (quoting Shaibu, 920 F.2d at 1426).

Whether consent was voluntarily given "'is to be determined from the totality of all the circumstances.'" Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973)). The Ninth Circuit has recognized the following factors to consider in assessing whether the consent was voluntary: (1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether a Miranda warning had been given; (4) whether the person was told that he had the right not to consent; and (5) whether the person was told that a search warrant could be obtained. Id. (citing United States v. Torres- Sanchez, 83 F.3d 1123, 1129-30 (9th Cir. 1996)). While "no one factor is determinative in the equation, "many of [the Ninth Circuit's] decisions upholding consent as voluntary are supported by at least several of the factors." Id. (citations omitted).

Here, the Defendant argues that all five factors suggest that consent is lacking because Mr. Woods was arrested at gunpoint, he was told a warrant could be immediately obtained, his Miranda warnings were not read until after the agents entered the home and began their search, and Mr. Woods was not informed that he had a right to refuse consent. The intimidating and coercive atmosphere created by the Agents, he argues, made any consent "simply a product of the atmosphere and not a consent given freely and voluntarily." The Government argues that the Agents did not intimidate or coerce the consent received from Mr. Woods. During the hearing, the Government asked Agent Lehnhoff about facts alleged in the Defendant's affidavit. Agent Lehnhoff testified that they did not threaten Mr. Woods with a search warrant and confirmed that they had not informed Mr. Woods that he could refuse consent. Both Agent Lehnhoff and Agent Gooding testified that during the arrest they did have their weapons drawn and that they used commanding language to effectuate the arrest but both Agents maintained that their conduct during the arrest did not create a coercive atmosphere which was intimidating to Mr. Woods. The Government also offered the

testimony of the Agents of Mr. Woods' unsolicited comments during the search where he admits that he had consented and a telephone conversation between Mr. Woods and his girlfriend which occurred from the Ada County Jail and was taped where Mr. Woods again admitted that he had consented to the search as the only way "to get my dog back."

Having viewed the evidence presented at the hearing, the Court finds that Mr. Woods voluntarily consented to allow the Agents to search his residence. Though the Agents had drawn their weapons during the arrest, the evidence surrounding the events of the evening do not suggest that the Agents' conduct was coercive or intimidating such that Mr. Woods' consent was not freely and voluntarily given. In fact, the initial consent was initiated by Mr. Woods' own statements when he overheard Agent Lehnhoff's telephone conversation. The Agents later requested consent at least two more times in order to assure themselves that Mr. Woods had consented. Further, the Agents denied threatening Mr. Woods with a warrant prior to the consent. Though the Agents did not advise Mr. Woods that is could refuse consent, this was not required. See Schneckloth v. Bustamonte, 412 U.S. 218, 232 (1973).

As further evidence of the consent, the Government elicited testimony from the three witnesses regarding Mr. Woods' unsolicited statements at the time of the search evidence that he had consented. All three witnesses at the suppression hearing testified that when the Officers from the High Desert Task Force entered the home Mr. Woods then said something to the effect of "if those guys come in consent is over." The Agents then testified that the Task Force Officers left the home and the Agents confirmed with Mr. Woods that they could continue to search. In addition the Government played an audio tape of a telephone conversation between Mr. Woods and his girlfriend made by Mr. Woods from the Ada County Jail. The conversation reveals that Mr. Woods stated that he had consented to the search of his home. During the conversation when his girlfriend made a

statement regarding a search warrant Mr. Woods stated "No, I consented...it was the only way to get my dog back." The remainder of the conversation relates primarily to Mr. Woods attempting to secure counsel for his arraignment the following day. The Court finds based on the evidence presented and the totality of the circumstances that Mr. Woods' consent was voluntary.

The defense highlighted the fact that the Agents could have obtained an arrest warrant and a search warrant prior to the events of October 18, 2006. The Government put on testimony that the Agents believed that they had probable cause for the arrest and that the search was proper in light of Mr. Woods' consent. Based on the evidence offered at the hearing, the Court agrees that probable cause for the arrest was shown and that a warrant was not necessary.

2)    <u>Right to Counsel</u>:

Following the arrest the Agents placed Mr. Woods in the front seat of their vehicle and, after Mr. Woods had given his initial consent to search, read him his Miranda rights. At that time, Mr. Woods requested an attorney. "If the defendant's request clearly expresses his desire to deal with the [government] only through counsel, then any interrogation must cease." <u>United States v. Ogbuehi</u>, 18 F.3d 807, 813 (9th Cir. 1994) (internal quotations omitted); <u>see also</u> <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981) (affirming that once an accused asserts his right to counsel, he cannot be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates conversation with the police.). In this case, following his request for counsel the Agents testified that they engaged in "casual conversation" and that after Mr. Woods asked to take his dog back to his house they requested consent to enter and then to search his residence.

The defense argues that because Mr. Woods had invoked his right to counsel, the Agents'

requests for consent violate Mr. Woods' Fourth Amendment rights.[1]  The Government argues that regardless of anything occurring after his invocation of his right to counsel, Mr. Woods had previously consented to the search and that fact is dispositive of the outcome of the motion to suppress.  The Government points to the testimony of Agent Gooding who testified that Mr. Woods had given consent to search the home prior to invoking his right to counsel and to Mr. Woods' unsolicited statements during the search and his subsequent phone call where he admitted that he had consented to the search.  Further, the Government argues the Agents' requests/confirmations for consent did not violate Miranda because they were not "custodial interrogation" as the questions do not elicit an incriminating response.  Thus, the Government maintains that given the totality of the circumstances, Mr. Woods freely and voluntarily gave his consent to search the home.

The Government is correct.  The Fifth Amendment right to counsel is separate and apart from the issue of whether an individual consented to a search and whether an individual's Fourth Amendment rights were violated.  See Edwards, 451 U.S. at 483-84.  Requesting consent to search after Miranda warnings are given and after an individual has invoked his right to counsel is not a "custodial interrogation" or a violation of Miranda or the Fifth Amendment.  The defense argues, however, that the post-invocation of counsel request for consent violates the Fourth Amendment.  This argument meshes two distinct legal concepts.  The right to counsel is a Fifth Amendment protection whereas the Fourth Amendment protects an individuals right to be free of unreasonable searches.  Here, as the Court has determined above, Mr. Woods' freely and voluntarily gave his consent to search his residence thereby nullifying any Fourth Amendment violation.  The fact that

---

[1]  The Defendant did not raise this issue in briefing the motion to suppress.  While the this practice of raising issues for the first time at a hearing is improper, the Court took up the argument in order to answer the legal question and in light of the impending trial date.  In the future, counsel for the defense is directed to include all arguments in his initial briefing on motions so as to allow opposing counsel an opportunity to properly respond and allow the Court time to consider the argument.

Mr. Woods had invoked his Fifth Amendment right to counsel does not change the fact that he gave his consent nor does the Agents' questioning of Mr. Woods after he had invoked his right to counsel violate the Fourth Amendment.

## ORDER

Based on the foregoing and being fully advised in the premises, the Court **DENIES** Defendant's motion to suppress (Dkt. No. 20). The trial remains set for **Tuesday, January 23, 2007 at 9:30 a.m. in Boise, Idaho**. Counsel is directed to file any and all pretrial submissions including trial briefs, jury instructions, voir dire, witness/exhibit lists on or before 10:00 a.m. on **Monday, January 22, 2007**.

**IT IS SO ORDERED.**

DATED:  January 22, 2007

Honorable Edward J. Lodge
U. S. District Judge